UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                      Case No. 17-CR-057 (PP)

JOEL RIVERA,

        Defendant.

_____

## DEFENDANT'S SENTENCING MEMORANDUM
_____

Defendant, Joel Rivera, ("Rivera"), by his attorneys, Jacob A. Manian and Lauren E. Maddente, respectfully submits his Sentencing Memorandum to assist the Court in crafting an appropriate and just sentence.

## BACKGROUND

Rivera was charged with five Counts of Hobb's Act Robbery, in violation of Title 18, United States Code, Sections 1951 and 1952, and five Counts of possessing and brandishing a firearm in furtherance of a crime of violence, in violation of Title 18, Section 924(c).

Following a six-day trial, the jury deliberated for almost two days before returning the following verdicts:

        Count 1:       Not Guilty

        Count 2:       Not Guilty

        Count 3:       Impasse

        Count 4:       Not Guilty

        Count 5:       Impasse

        Count 6:       Impasse

Count 7:        Guilty

Count 8:        Guilty

Count 9:        Guilty

Count 10:       Guilty

On November 16, 2017, Rivera filed a Motion for a Judgment of Acquittal or for a New Trial on Counts 7-10. ("Motions") (Doc. 100). On December 5, 2017, the government filed its response to Rivera's Motions. (Doc. 103). Rivera's Motions are pending as of this filing.

The probation department submitted a Presentence Investigation Report ("PSR") on November 14, 2017. The department noted that the minimum term of imprisonment required by statute for count eight is seven years. (¶62). With regard to count ten, the minimum term of imprisonment is twenty-five years. (¶69).

The probation department calculated Rivera's guidelines as though he was found guilty on every robbery count. (¶70). It determined that counts one, three and five should be considered relevant conduct. Additionally, the probation department assigned multiple level increases for each robbery count based primarily on conduct committed by Antonio Thomas. The department calculated Rivera's guidelines on the robbery counts as follows:

Count One:

Base offense level-§2B3.1……………………………………………………………20
Discharge of a firearm-§2B3.1(b)(2)(A)……………………………………………7
Person physically restrained-§2B3.1(b)(4)(B)……………………………………...2
Defendant was a leader, organizer, manager or supervisor-§3B1.1(c)………………2

Adjusted Offense Level (subtotal)……………………………………………………31

Count 3:
                Base Offense Level-§2B3.1……………………………………………20
                Firearm was used-§2B3.1(b)(2)(B)…………………………………………6
                Person physically restrained-§2B3.1(b)(4)(B)…………………………2
                Defendant was a leader, organizer, manager or supervisor-§3B1.1(c)..2

2

Adjusted Offense Level (subtotal)……………………………………………………30

Count 5:
        Base Offense Level-§2B3.1……………………………………………..20
        Firearm brandished-§2B3.1(b)(2)(C)…………………………………5
        Defendant was a leader, organizer, manager or supervisor-§3B1.1(c).. 2

Adjusted Offense Level (subtotal)……………………………………………………27

Count 7:
        Base Offense Level-§2B3.1……………………………………………..20
        Person physically restrained-§2B3.1(b)(4)(B)…………………………2
        Defendant was a leader, organizer, manager or supervisor-§3B1.1(c)...2

Adjusted Offense Level (subtotal)…………………………………………………… 24

Count 9:
        Base Offense Level-§2B3.1……………………………………………..20
        Defendant was a leader, organizer, manager or supervisor-§3B1.1(c)... 2

Adjusted Offense Level (subtotal)……………………………………………………..22

In calculating the Multiple Count Adjustment, the probation department determined Rivera's total offense level to be 35. (PSR ¶¶70-76.  Based on a total offense level of 35 and a criminal history category of III, the department determined Rivera's guideline imprisonment range on counts one, three, five, seven and nine to be 210 months to 262 months.  (PSR ¶126).  Thus, with the mandatory minimum sentences required on counts eight and ten, if the Court accepts the guideline calculation set forth in the PSR, the result would be a guideline sentence of approximately 50 years confinement.  Rivera is 29 years old.

The government filed its sentencing memorandum on December 29, 2017.   In its memorandum, the government recommends a sentence of 49.5 years.  ***Before Rivera's trial, the government submitted a plea offer of 10 years.***

Apparently in an effort to make its sentencing recommendation seem credible, the government spends roughly half of its sentencing memorandum summarizing prior robbery

3

allegations made against Rivera. The great bulk of these allegations were made by proven criminals looking for leniency. With the exception of a single armed robbery incident in 2007 when Rivera was 18 years old, all of the other allegations were never charged, were dismissed, or resulted in acquittals. Rivera strongly denies these allegations, and the government certainly has not provided sufficient evidence for the Court to rely on these allegations in determining his sentence.

As for the allegations concerning his time in the Waukesha jail, Rivera denies threatening any officer. Rivera has been subjected to oppressive and unfair treatment in the Waukesha jail virtually the entire time he has been in custody. He has been kept on segregation status (the "hole") for more than eight months. He went months without any conduct tickets or other discipline; yet, his numerous requests for a change of his classification status have been denied. Part of the reason Rivera was so adamant about having his trial in September was because of the conditions he has been under in the Waukesha jail.

Counsel has spoken with supervisors in the jail numerous times in an effort to have Rivera transferred back to general population. Most recently, counsel spoke with a jail captain on December 23, 2017. At that time, Captain Lewandowski informed counsel that she would be meeting with supervisors in the jail on December 27, 2017 to address our concerns. As of this filing, counsel does not yet know the result of that meeting. Counsel is very concerned regarding the psychological toll inflicted on Rivera due to his treatment over the last year while in custody. Counsel believes continuous segregation for months and months rises to the level of cruel and unusual punishment.

For all the allegations casually tossed in the government's sentencing memorandum, it is worth emphasizing that Rivera only falls into a category III because he was assessed one point for

4

a municipal marijuana citation.  Yet, the government calls him a "career criminal," urges the Court assume all of the allegations in its sentencing memorandum are true, using Rivera's sentencing here as a make-up call and sentence him to what effectively would be a life sentence, when only a few months ago the government believed a sentence of ten years was sufficient.

Apparently not sufficiently content with summarizing unfounded allegations, the government also misrepresents several of Rivera's jail phone calls with his family in an effort to pile on.  This is particularly concerning given the fact that Rivera raised this issue in his motions in limine before trial. (Doc 73; p. 7).  There, Rivera pointed out the fact that the government inaccurately translated his words and cherry-picked isolated statements to distort the true context of what he was saying. Further, in his motions in limine, Rivera pointed to numerous statements – government translated and summarized – which showed Rivera proclaiming his innocence and expressing frustration as to why he was locked up.  Yet, in its sentencing memorandum, the government again claims that Rivera never proclaimed his innocence.  That is false.

The Court should reject the government's approach of throwing everything at the wall and seeing what sticks in an effort to justify an unjust guideline sentence.  Instead, Rivera urges the Court to impose a sentence that is rational and proportionate in light of the facts and circumstances of this case.

In the event the Court denies Rivera's pending motions entirely, Rivera urges the Court to find that counts one, three and five are not relevant conduct.  Rivera urges the Court to assign a total offense level of 22 on Counts seven and nine under the multiple count adjustment.  With a criminal history category of III, Rivera's guideline imprisonment range should be 51 months to 63 months on Counts seven and nine.

In terms of his total sentence, pursuant to *Dean v. United States,* 137 S. Ct. 1170 (2017), and in light of the mandatory minimum sentences required on counts eight and ten and the factors set forth under 18 U.S.C. § 3553(a), Rivera suggests that a sentence of one-day of confinement each on counts seven and nine, concurrent to each other, comports with reason, sound public policy, and the purposes of sentencing.

## I. THE COURT SHOULD FIND THAT COUNTS ONE, THREE AND FIVE ARE NOT RELEVANT CONDUCT.

The Seventh Circuit has held that acquitted conduct may be used in calculating a guideline sentence as long as it is proven by a preponderance of the evidence. *United States v. Price*, 418 F.3d 771, 787-88 (7th Cir. 2009). However, the Seventh Circuit has also made clear that information considered by the Court for sentencing must be reliable because a criminal defendant has a constitutional right to be sentenced on the basis of accurate information. *United States v. Rollins,* 544 F.3d 820, 838 (7th Cir. 2008). The Seventh Circuit has held that "it is axiomatic that the defendant has a due process right to be sentenced on the basis of reliable information." (citing *United States v. Lanterman,* 76 F.3d 158, 160 (7th Cir. 1996)). Further that "the hallmark of reliability is consistency of facts and details." *United States v. Zehm,* 217 F.3d 506, 514 (7th Cir. 2000) (citing *United States v. Galbraith,* 200 F.3d 1006, 1012 (7th Cir. 2000)).

In the case at hand, Thomas has been anything but consistent. He admitted lying multiple times to police, and he contradicted himself repeatedly at trial regarding crucial points.[1] For example, he claimed that Rivera was holding customers hostage in the back of the Family Dollar (counts seven and eight), even though the video surveillance shows no such thing, and even though Thomas said he did not know where Rivera was in the store and could not see him. Thomas

---

[1] Rivera's Motions (Doc 100) set forth in detail and provide numerous evidentiary examples as to why Antonio Thomas is not credible. For this reason, Rivera only briefly summarizes here the reasons why Thomas should not be believed as it relates to a determination of relevant conduct.

6

admitted he was lying when he told police on multiple occasions that Rivera put a gun to his head and threatened to kill his family if he did not commit the robberies. Yet, minutes later on cross-examination, he again claimed that Rivera threatened him and his family with a gun if he did not commit the robberies. Thomas admitted lying about Rivera keeping the gun that Thomas used in a safe. (Trans. 759: 15, 22-23). He claimed that he just made it up, at one point admitting "**I was lying the whole time**." (Trans. 756:23).

As the Court is well aware, Thomas has a long history of mental illness and suffers from hallucinations and hearing voices. At trial, the Court had to excuse the jury because Thomas became argumentative and could not control himself. He began cursing and refused to respond to questions. Even the government stated at trial that Thomas was not a competent witness and asked that the Court afford him special treatment because of his outburst. Thomas has demonstrated that he is willing to make any claim – even accusing police of sexually assaulting him when he was being taken into custody – in order to save himself from a certain life sentence.

Rivera never had a weapon, never made threats and never demanded money from anyone. He was not observed committing or assisting any crime on any of the surveillance videos. In fact, he is not shown interacting with Thomas in any way. The police never identified Rivera as a possible accomplice, despite the fact that members of the Robbery Task Force investigated each robbery, including watching all of the surveillance videos.

The PSR does not even mention Thomas's credibility issues. Likewise, it does not explain a basis for finding that counts one, three, and five were established by a preponderance of the evidence. Instead, the PSR simply summarizes and relies on the government's version of facts and concludes that counts one, three and five are relevant conduct.

7

In this case, there is insufficient evidence to find - even by a preponderance of the evidence - that Rivera knew Thomas was armed, knew that he was going to commit an armed robbery, or that he took affirmative steps to facilitate the robberies. A preponderance requires more than a hunch. It requires more than a gut feeling.

Judge Goodwin, sitting in the Southern District of West Virginia, has observed that while the law is settled that courts are to make relevant conduct determinations based on a preponderance standard, it nonetheless may be advisable for courts to consider whether relevant conduct has been proven beyond a reasonable doubt in order to assist courts in determining how much weight to give the guidelines because of the great risk of error and the concern that relevant conduct will often result in exorbitantly longer sentence recommendations under the guidelines. *United States v. Gray*, 362 F.Supp.2d 714, 723 (S.D. W. Va. 2005).

The government's entire case boils down to Antonio Thomas - a proven liar with a long history of mental illness who implicated Rivera and testified to save his own life. In its sentencing memorandum, the government distorts the facts of the Arandas robbery and claims that Rivera was ordering restaurant workers to comply with Thomas's demands. The evidence showed that Rivera was lying on the floor and advising that the workers should comply so that they did not get hurt. The police responded and watched the surveillance. The police did not believe Rivera was a co-actor. Rivera was not found guilty of either count related to the Arandas robbery.

For the Court to find that counts one, three and five are relevant conduct, it could only do so by finding that Antonio Thomas is credible and reliable with regard to each of those counts. Rivera has a constitutional right to be sentenced on the basis of accurate information. We urge the Court to find that the conduct underlying counts one, three and five has not been established based on Thomas's testimony. The remaining evidence is insufficient to satisfy a preponderance of the

8

evidence standard, and therefore counts one, three and five should be excluded from calculating Rivera's guideline sentence.

## II. WITH REGARD TO COUNTS SEVEN AND NINE, THE COURT SHOULD DETERMINE RIVERA'S TOTAL OFFENSE LEVEL TO BE 22.

The PSR correctly calculated a base offense level of 20 for counts seven and nine. The PSR added two levels on count seven based on a finding that a person was physically restrained in order to facilitate the commission of the robbery. The PSR's finding is based on Thomas's unsupported allegation, which he later contradicted, that Rivera "held the patrons of the Family Dollar back in order to enable Mr. Thomas to complete the robbery." (PSR ¶57). As addressed more fully in Rivera's Motion (Doc 100), the evidence at trial does not at all support that Rivera held or restrained anyone. The surveillance video shows no such thing. Thomas testified at trial he could not see where Rivera was in the store and did not see him holding any hostages. (Trans. 749:3).

To the extent that an increase on count seven is based on Thomas's conduct in restraining the cashier in the Family Dollar, the evidence is insufficient to find that Rivera should be held accountable for Thomas's acts. Pursuant to USSG §1B1.3(a)(1)(B), a defendant can be held responsible for the acts of others. However, a defendant's responsibility is limited by the scope of his agreement to jointly undertake the activity. Acts of others that were not within the scope of the defendant's agreement, even if those acts that were known or reasonably foreseeable to the defendant, are not relevant conduct under (a)(1)(B). Commentary to USSG §1B1.3 n. 3(B).

There is insufficient evidence that Rivera agreed to jointly undertake the activity that Thomas committed. The evidence does not support that Rivera had any advanced knowledge that Thomas was going to commit these robberies. Likewise, there is insufficient evidence that Rivera

9

had advanced knowledge that Thomas was armed with a firearm. Therefore, Rivera is not responsible for Thomas's conduct and should not be assessed an increase.

The probation department added a two-level increase to counts seven and nine based on the unsupported theory that Rivera was somehow a leader, organizer, manager, or supervisor of Thomas's criminal activity. The evidence at trial showed that Thomas committed these robberies of his own volition. (Trans. 685:9). He even testified that he committed the Subway robbery in order to get money to buy himself stuff. Thomas committed these robberies because <u>he</u> wanted money. He was the mastermind of these robberies.

Further, there was only minimal contact between Thomas and Rivera. Thomas would hang around Rivera's residence, and would occasionally sneak into the basement. Thomas was arrested at a completely different location than Rivera's residence. Further, Emily Zayas testified that Rivera confronted Thomas after the robbery on January 17, 2017 as to why he committed the robbery. (Trans. 1090:3-5). For these reasons, the Court should find that a two-level increase based on Rivera influencing Thomas is not supported by the evidence.

The total offense level for counts seven and nine should be 20. Under the Multiple Count Adjustment, the Court should find that Rivera's total offense level is 22.

| Count | Adjusted Offense Level | Units |
|-------|------------------------|-------|
| 7 | 20 | 1 |
| 9 | 20 | 1 |

**20** (the highest adjusted offense level) + **2** (total units) = **22.**

With a criminal history category of III, the guideline imprisonment range should be 51 months to 63 months.

### III. PURSUANT TO *DEAN V. UNITED STATES* AND THE APPLICABILITY OF THE §3553(a) FACTORS, THE COURT SHOULD IMPOSE A SENTENCE OF ONE-DAY CONFINMENT ON COUNTS SEVEN AND NINE, CONCURRENT TO EACH OTHER.

A sentence of one-day of confinement on counts seven and nine is appropriate and consistent with the factors under §3553(a). In *Dean v. United States*, the Supreme Court held that 18 U.S.C. §924(c)(1)(D)(ii), which requires a sentence under §924(c) to run consecutively to the sentence for the offense in which the firearm was used, does not forbid a district court to choose a term of imprisonment for the predicate offense so that the aggregate imprisonment comports with the sentencing criteria in 18 U.S.C. §3553(a). 137 S.Ct. 1170, 1176 (2017); *United States v. Wheeler*, 857 F.3d 742, 745 (7th Cir. 2017). In other words, a court can take into account the mandatory minimums under §924(c) when calculating an appropriate sentence for the predicate offense(s).

In *Dean*, the District Court expressly stated that it would have agreed to Dean's request to impose concurrent one-day sentences for the predicate offenses if the court believed that the law allowed it to do so. *Id.* at 1172. The Supreme Court expressly stated in *Dean* that "nothing in the requirement of consecutive sentences prevents a district court from imposing [the mandatory minimum sentence] under §924(c) and a one-day sentence for the predicate crime, provided those terms run one after the other." *Id.* at 1173.

In this case, under §924(c)(1)(D)(ii), the mandatory minimum sentences on counts eight and ten total 32 years. A term of confinement on counts eight and ten alone would cost over one million dollars. Rivera is twenty-nine years old with young children and a demonstrated ability and willingness to work. He has one prior criminal conviction that counts for points on his criminal history score. Even the low guideline sentence suggested by the PSR and advocated by the

11

government is effectively a life sentence when run consecutive to the mandatory minimums on counts eight and ten.

This, for a defendant who is not shown to have possessed a firearm at any point. Given the evidence presented at trial, a one-day sentence on each of the predicate offenses is appropriate in order to satisfy the parsimony principle that instructs courts to "impose a sentence sufficient, but not greater than necessary, to comply with, the four identified purposes of sentences: just punishment, deterrence, protection of the public, and rehabilitation."

## IV.     APPLICATION OF THE 3553(a) FACTORS.

In imposing a sentence, the district court must consider the factors set forth in §3553(a):

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;
(2) The need for the sentence imposed:

      (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      (B) To afford adequate deterrence to criminal conduct;
      (C) To protect the public from further crimes of the defendant;
      (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available;
(4) The advisory guideline range;
(5) Any pertinent policy statements issued by the sentencing commission;
(6) The need to avoid unwarranted sentencing disparities; and
(7) The need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a).

After considering these factors, the Court must impose a sentence that is "sufficient but not greater than necessary" to comply with the purposes of sentencing: punishment, deterrence, protection of the public, and rehabilitation of the defendant. The Court should give respectful consideration to the guideline recommendation in making this determination, *see Gall v. United States*, 552 U.S. 38, 46, 49, 128 S.Ct. 586 (2007), but it may not presume that a guideline sentence

12

is the correct one. *Nelson v. United States*, 555 U.S. 350, 129 S.Ct. 890, 892 (2009) (citing *Gall*, 552 U.S. at 50).

### 1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.

Without question, these are very serious offenses. However, it is unjust and improper to treat Thomas and Rivera as one in the same. Thomas's abhorrent conduct was proven overwhelmingly. The same cannot be said for Rivera. In fact, it is downright puzzling how the jury could reject Thomas's claims for six of the counts, but still find Rivera guilty of the final four counts. Particularly troubling is the fact that the jury found Rivera guilty on counts eight and ten. As discussed throughout this memorandum, and more fully in Rivera's pending motions (Doc 100), the allegations against Rivera consist of the incredible and unreliable testimony of Antonio Thomas. There is insufficient evidence that Rivera agreed to jointly undertake the activity that Thomas committed. The evidence does not support that Rivera had any advanced knowledge that Thomas was going to commit these robberies. Likewise, the evidence was insufficient to find that Rivera had advanced knowledge that Thomas was armed with a firearm.

Rivera's background and personal history is summarized in the PSR. Rivera was raised by his mother as a single parent and he had no father figure growing up. However, Rivera has demonstrated a steady work history. He has worked multiple jobs through On-Site Staffing, and On-Site Staffing has indicated that it would consider him for re-hire. He was also employed through Staffing Partners at a factory on the southside of Milwaukee. In addition, he reported working side jobs such as painting houses for approximately two years. Emily Zayas testified at trial that Rivera was gainfully employed during the majority of the time they were together and that Rivera worked at Joseph Campione – a garlic company in Milwaukee. (Trans. 1099:10). This

13

shows strong character and is inconsistent with the unfair and unfounded "career criminal" label placed on him by the government.

Rivera likes to work and has proven himself to be a hard worker. When released from custody he has the ability to support himself as a mechanic.

He has young children. In addition to serving as a father figure to Ms. Zayas's child, Rivera has a son, Louis, who is twelve years old and a son, Jonathan who is eleven years old. He has worked hard to successfully co-parent with Lucy Vasquez, who is the mother of his children. This again shows strong character.

### 2. Specific and General Deterrence; Protection of the Community; Rehabilitative Needs.

The mandatory minimums on counts eight and ten are sufficient to achieve both specific and general deterrence. Likewise, they are sufficient to protect the community.

As for Rivera's rehabilitative needs, he indicated regular marijuana use from a very early age. Rivera would welcome treatment for marijuana. There is no need for such treatment to take place in a confined setting.

### 3. The Need to Avoid Unwarranted Sentence Disparities.

The mandatory minimum sentences under §924(c) grossly distort Rivera's alleged role in these offenses. This is the result of the government stacking five counts under §924(c) on top of each other in a single indictment.

To appreciate the influence of the §924(c) counts on the overall sentence, removing for a moment counts eight and ten from consideration, and using the PSR's finding of relevant conduct and total offense level of 35, with a criminal history category of III, yields a low guideline sentence of 17.5 years (210 months) – barely more than half the sentence mandated under the §924(c)

counts. Stated another way, the §924(c) counts nearly double the sentence advised for the predicate offenses.

Ignoring the §924(c) counts and only calculating the guidelines on counts seven and nine – even applying the PSR's increases – yields a total offense level of 26. With a criminal history category of III, the guideline imprisonment range would be 78 months to 97 months. Under this calculation, the §924(c) penalties nearly triple the high guideline sentence of the predicate offenses and more than quadruple the low guideline sentence.

This analysis is worth particular consideration in this case where Rivera was charged and found guilty on counts eight and ten under the government's theory that he aided and abetted the person who had the gun and committed the robberies. Given his alleged role in these offenses, and the jury's findings on the first six counts, the wildly unjust sentence produced by a guilty finding on two of the five §924(c) counts warrants particular attention and consideration. Such a result creates an unwarranted disparity between Rivera and other defendants accused of aiding and abetting such conduct.

### 4. The Need to Provide Restitution to any Victims.

A sentence consistent with the PSR's calculated guideline range on top of the mandatory minimums would effectively amount to a life sentence. Even the sentence suggested in this memorandum would make it extremely unlikely that any restitution could ever be repaid. However, at least with the sentence suggested here, there would be a chance for Rivera to pursue gainful employment, particularly given that he has demonstrated the ability and willingness to maintain employment.

15

### V. CONSIDERTIONS OF SENTENCING POLICY SUPPORT A SENTENCE OF ONE-DAY ON EACH OF THE HOBB'S ACT ROBBERY COUNTS.

Although framed in terms of a departure from the guidelines rather than a factor in determining relevant conduct, courts have held that a downward departure is appropriate when consideration of charged, uncharged or acquitted conduct inflates a particular guideline sentence. *See e.g. United States v. Koczuk*, 166 F.Supp. 2d 757, 762 (E.D.N.Y. 2001). In *Koczuk*, the court held that in situations where "relevant *acquitted* conduct produces the same sentencing result as if the defendant had been convicted of that conduct or significantly increases the range, a downward departure is invariably warranted." *Id*. (emphasis in original). Likewise, the Second Circuit has stated that a downward departure is appropriate where an offense level "has been extraordinarily magnified by a circumstance that bears little relation to the defendant's role in the offense . . . ." *Id*. (quoting *United States v. Restrepo*, 936 F.2d 661, 667 (2d Cir. 1991)).

In the case at hand, the PSR's erroneous determination that counts one, three and five are relevant conduct has created a situation where Rivera's guideline sentence is the same as though he were convicted on each of those counts. At the same time, though separate from a guideline determination, the mandatory minimums under §924(c) produce a sentencing result that bears little relation to Rivera's alleged role. For these reasons, it is appropriate for the Court to depart from the guidelines and adopt the sentence suggested in this memorandum.

### CONCLUSION

For the foregoing reasons set forth above, we respectfully request that the Court, after determining the applicable guideline range, impose a sentence of one-day on counts seven and nine, concurrent to each other. It is respectfully suggested that such a sentence would be "sufficient, but not greater than necessary" to fulfill the requirements of sentencing.

16

Dated at Milwaukee, Wisconsin this 4th day of January, 2018.

FOX, O'NEILL & SHANNON, S.C.
Attorneys for Defendant, Joel Rivera

*/s/ Jacob A. Manian*

By: _____
JACOB A. MANIAN
State Bar No. 1064360

P.O. Address:
622 North Water Street, Suite 500
Milwaukee, WI 53202
Phone  (414) 273-3939
Email  jamanian@foslaw.com